540 P.2d 345 (1975)
Robert L. HAWKINS, D.O., Plaintiff-Appellant,
v.
George F. KINSIE et al., Defendants-Appellees.
No. 74-471.
Colorado Court of Appeals, Div. III.
August 12, 1975.
*346 Kent A. Borchard, Boulder, for plaintiff-appellant.
French & Riddle, Joseph C. French, Boulder, for defendants-appellees George F. Kinsie, Edward Peppler, James Sloan, Michael R. Schmid and E. Carl Forgey.
Robert W. Hansen, Denver, for defendant-appellee Longmont United Hospital Ass'n.
Not Selected for Official Publication.
RULAND, Judge.
Plaintiff, Robert L. Hawkins, a licensed doctor of osteopathy, appeals from a summary judgment entered in favor of all defendants on the first three claims of his amended complaint for damages allegedly resulting from denial of staff privileges at Longs Peak Osteopathic Hospital (Longs Peak) and Longmont United Hospital. The judgment is affirmed in part and reversed in part.
Hawkins' amended complaint alleged four claims for relief. The fourth claim was directed against only one of the individual defendants for alleged libel and was not disposed of by the summary judgment. We note that appeal of the trial court's dismissal of the first three claims is predicated upon entry of final judgment by the trial court pursuant to C.R.C.P. 54(b).
In the first claim of his amended complaint, Hawkins alleged that in September of 1968 he was admitted to the staff of Longs Peak with full staff privileges. During the spring of 1970 the individual defendants, constituting the Board of Directors of Longs Peak, voted to deny Hawkins staff membership, thereby preventing him from admitting and caring for his patients in the hospital. Hawkins alleged that the action of the Board in terminating his staff membership was not *347 conducted in compliance with the hospital by-laws because, inter alia, such action was not consistent with the recommendation of the hospital staff. In July 1971, defendant Longmont United Hospital Association (Longmont) was formed by the merger of Longmont Community Hospital and Longs Peak. As a result of the prior action of Longs Peak, Hawkins was initially denied staff membership at Longmont, and at the commencement of this action had not regained full staff status. Hawkins alleged that the denial of staff privileges resulted in loss of patients (and thus loss of income) and injury to his professional standing.
According to the second claim of the amended complaint, Longs Peak derived funds from public sources and public solicitation, received tax benefits as a non-profit corporation, was dedicated by its charter and by-laws to a public purpose, and was a "public agency." Based on this allegation and the allegations in the first claim, Hawkins asserted that the Board's action violated his "civil rights."
Hawkins incorporated the allegations of the first two claims into his third claim and further alleged that the action of defendants in denying him staff membership was "unreasonable, arbitrary, capricious and discriminatory." Based on the allegations in the first three claims for relief, Hawkins requested an award of actual and punitive damages.
Longmont answered denying the material allegations of Hawkins' amended complaint. Subsequently it moved for summary judgment pursuant to C.R.C.P. 56 with supporting affidavits from the former administrator of Longs Peak and the administrator of Longmont.
In his affidavit the Longs Peak administrator affirmed that Longs Peak had been a non-profit corporation founded and maintained by private persons. Its elected officers and directors had exclusive power and authority to manage the affairs of the hospital. Further, the hospital "did not receive direct governmental funding to assist in either its construction or its operation" and was at all times operated as a private hospital and not as a public agency. The Longmont administrator attested to similar facts relative to Longmont. Hawkins did not submit any counter-affidavits.
The individual defendants filed a motion to dismiss Hawkins amended complaint pursuant to C.R.C.P. 12(b)(5). By agreement of the parties this motion was also considered as a motion for summary judgment. C.R.C.P. 12(b).
Following hearings on defendants' motions, the trial court concluded that Longmont was a private hospital with complete authority to manage its affairs. Lacking precedent in this jurisdiction, the trial court determined to follow the rule applied in the majority of jurisdictions to the effect that a court may not interfere with the exercise of discretion by the board of a private hospital in determining which doctors may serve on its staff. Consequently, the trial court granted defendants' motions.
On appeal, Hawkins first contends that the trial court erred in its order of dismissal because the actions of Longs Peak and Longmont are subject to judicial scrutiny based on the character of these institutions as "public" agencies. Relying, inter alia, on Eaton v. Grubbs, 329 F.2d 710 (4th cir.) and Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th cir.), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659, Hawkins asserts that since Longs Peak and Longmont receive "public assistance," they should be considered public agencies and thus subject to constitutional standards of due process in denying staff privileges. This contention has no merit.
According to the amended complaint and the affidavits of the administrators, the only "public assistance" received by Longs Peak and Longmont consisted of tax benefits derived from their non-profit corporate status and funds obtained through solicitation of the general public. By way of contrast, in both Eaton and Simkins, supra, *348 it appeared that governmental assistance from either state or federal sources was substantial.
Based upon the record before us, Longs Peak and Longmont fall within the generally accepted definition of a private hospital in that these institutions were founded and maintained by private corporations and neither the state nor any municipality exercised a voice in the management or control of the internal operations of these corporations. See, e. g., Woodard v. Porter Hospital, Inc., 125 Vt. 419, 217 A.2d 37. While the complaint indicates that the hospitals serve the general public, this factor, standing alone, does not make them public agencies. See Ward v. St. Anthony Hospital, 476 F.2d 671 (10th Cir.). Hence, there, there is no basis for imposition of constitutional due process standards in this case, and dismissal of Hawkins' claim premised on violation of procedural due process requirements was proper.
Hawkins contends that he did state a claim for relief in his third claim which seeks recovery for defendants' failure to renew his staff privileges because the decision not to renew was allegedly unreasonable, arbitrary, and capricious. Hence, the trial court's action in dismissing this claim was premature.
We find no Colorado authority which is dispositive of the issue in this case. In Newton v. Board of County Commissioners, 86 Colo. 446, 282 P. 1068, our Supreme Court held that a physician had no constitutional or statutory right to practice in a public hospital and that "[a] regulation excluding from the county hospital, or the right to practice therein, the devotees of some of the numerous systems or methods of treating diseases authorized to practice the profession in Colorado is neither unreasonable nor arbitrary." In the present case, plaintiff was not terminated from the hospital staff because of the school of medicine pursuant to which he practiced. Rather, he alleges that the failure to renew his membership was "without cause," and the defendants did not make any attempt in conjunction with the motion for summary judgment to justify their action on the basis of any hospital rule, regulation, policy, or practice.
Therefore, we consider the question of when a court may intervene in the decisions of a private hospital not to place a physician on its staff or renew his staff privileges to be one of first impression in Colorado. Courts in other jurisdictions have considered this issue with inconsistent results. See Note, The Physician's Right To Hospital Staff Membership: The Public-Private Dichotomy, 1966 Wash.U.L.Q. 485; Annot., 37 A.L.R.3d 645. The majority of courts have granted the boards of private hospitals, in effect, unfettered discretion in this area, holding that a private hospital has the right to refuse a physician appointment to its medical staff and that the exercise of that right is not subject to judicial review. See, e. g., Mauer v. Highland Park Hospital Foundation, 90 I11. App.2d 409, 232 N.E.2d 776; State ex rel. Sams v. Ohio Valley General Hospital Ass'n, 149 W.Va. 229, 140 S.E.2d 457. The reasoning of these courts is well stated in Shulman v. Washington Hospital Center, 222 F.Supp. 59 (D.D.C.).
Following the lead of the Supreme Court of New Jersey in Greisman v. Newcomb Hospital, 40 N.J. 389, 192 A.2d 817, other jurisdictionsalbeit a minorityhave concluded that the courts should grant relief where the action of the private hospital has been demonstrated to be unreasonable, arbitrary, and capricious. See, e. g., Willis v. Santa Ana Community Hospital Ass'n, 58 Cal.2d 806, 26 Cal.Rptr. 640, 376 P.2d 568; Davidson v. Youngstown Hospital Ass'n, 19 Ohio App.2d 246, 250 N.E.2d 892. The reasoning of these cases is more persuasive.
While Longs Peak and Longmont fall within the usual definition of private hospitals, it is unrealistic to ignore their function in serving the public. Indeed, it is not disputed that these hospitals were conducted *349 for the benefit of the general public. Hence, their governing boards assumed responsibility for making decisions which greatly affected the members of the general public in the Longmont area who required medical care. Application of the majority rule under such circumstances could deprive a highly qualified physician of redress where denial of staff privileges has been based not on his competence but on some consideration which did not interfere with or affect in any way the hospital's operation. In such circumstances, both the physician and the patients in a community would be penalized without a remedy being available.
While the governing board of a private hospital must necessarily have broad discretion in its decisions relative to renewal of staff privileges for a physician, see Silver v. Castle Memorial Hospital, 53 Haw. 475, 497 P.2d 564, this discretion must not be immune from judicial review under all circumstances. See Woodard v. Porter Hospital, Inc., supra. Therefore, a physician whose staff privileges are not renewed by the governing board of a private hospital operated to serve the general public states a claim for relief in damages by alleging that the decision not to renew those privileges was arbitrary, capricious, and unreasonable.
Finally, Hawkins contends that the trial court erred in dismissing his claim based solely upon the alleged failure of Longs Peak to comply with procedural requirements in its by-laws in determining to deny his staff privileges. We disagree.
Hawkins does not seek injunctive relief to compel defendants to adopt or follow a procedure for removal of staff privileges which provides the physician a fair and reasonable opportunity to be heard prior to the denial of his staff privileges. See, e. g., Berberian v. Lancaster Osteopathic Hospital Ass'n, Inc., 395 Pa. 257, 149 A.2d 456; see also Pinsker v. Pacific Coast Society of Orthodontists, 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253. Rather, having been readmitted to the hospital staff on a probationary basis, he seeks money damages only. Therefore, damages can only be recovered if it is shown that the Board's decision was unreasonable, arbitrary, and capriciousnot by showing it was merely procedurally irregular. Hence, failure to comply with the by-laws would constitute only one circumstance to consider in determining whether the action of the governing board was unreasonable, arbitrary, and capricious.
That portion of the judgment dismissing Hawkins' amended complaint insofar as it alleges violations of his rights to due process of law and of the procedural requirements of the hospital by-laws is affirmed. That portion of the judgment dismissing Hawkins' claim for damages based on the allegation that the Board's decision was unreasonable, arbitrary, and capricious is reversed, and the cause remanded with directions to reinstate the third claim and for further proceedings in connection therewith.
VanCISE, J., concurs in part and dissents in part.
STERNBERG, J., concurs in part and dissents in part.
VanCISE, Judge (concurring in part and dissenting in part):
I concur with Judge Ruland except for his conclusion that Dr. Hawkins's third claim, alleging that the Board's decision not to renew his full staff privileges was "arbitrary, capricious, and unreasonable," states a claim for relief in damages. These are private hospitals. That they serve the public and are "conducted for the benefit of the general public," neither justifies nor requires this court's intervention in their internal affairs. I would affirm dismissal of this claim.
Some courts have permitted limited review of this kind in cases involving public hospitals. See State ex rel. Sams v. Ohio Valley General Hospital Association, 149 W.Va. 229, 140 S.E.2d 457 (1965); Mauer *350 v. Highland Park Hospital Foundation, 90 Ill.App.2d 409, 232 N.E.2d 776 (1967). However, a hospital, operated as here by a private corporation with authority to elect its own officers and directors, remains a private institution even if it is operated for the benefit of the public. Shulman v. Washington Hospital Center, 222 F.Supp. 59 (D.D.C.1963). It is not a public utility, Shulman, supra, and it need not accommodate everyone who applies for treatment or for permission to serve. Levin v. Sinai Hospital, 186 Md. 174, 46 A.2d 298.
In Newton v. Board of County Commissioners, 86 Colo. 446, 282 P. 1068, our Supreme Court held that a licensed physician has no constitutional or statutory right to practice his profession, even in a public hospital, and the court upheld a resolution by the board of a county hospital excluding osteopaths from practicing therein. The court ruled that it could not substitute its judgment for that of the board.
Similarly, the "overwhelming weight of authority, almost approaching unanimity," is that a private hospital has the right to appoint and remove members of its medical staff at will, and in its discretion to exclude certain members of the medical profession from practicing in the hospital, and that these rights are not subject to judicial review. Shulman v. Washington Hospital Center, supra. See Mauer v. Highland Park Hospital Foundation, supra; State v. Ohio Valley General Hospital Association, supra; and Annot., 37 A.L.R.3rd 645 (especially cases cited on pp. 659-660).
In the present case, judicial notice is taken of the fact that there are other public and private hospitals in the metropolitan area of which Longmont is a part. Also no claim has been made that Dr. Hawkins is unable to care for his patients at Longmont United Hospital (albeit without full active staff status) or at other area hospitals. No compelling reason has been demonstrated here to depart from the general rule recognizing the full discretion of hospital authorities in selecting their medical staffs, nor to attempt to distinguish Newton v. Board of County Commissioners, supra, in order to reach a contrary result. The judgment of the trial court should be affirmed.
STERNBERG, Judge (concurring in part and dissenting in part):
I agree with the holding of Judge Ruland's opinion that a hospital, albeit private, does not have unfettered discretion to act arbitrarily. Because of its function in serving the public in so vital an area as health, I believe that a cause of action was stated in the allegation of unreasonable, arbitrary, and capricious conduct in discharging the plaintiff. Hence, dismissal of his claim without giving him an opportunity to prove the allegations thereof was premature. I also agree that the first claim should have been dismissed.
However, I would go further in this case than does Judge Ruland's opinion, and would reinstate the second claim for relief. While it is true that both hospitals are private in that they are run as private corporations without management by any governmental entity, nevertheless, I would hold that the acceptance by the hospitals of public assistance in the form of tax benefits derived from their non-profit corporate status and from solicitation of the general public may be sufficient to subject them to liability as public agencies under the doctrine emanating from the Eaton v. Grubbs and Simkins v. Cone cases cited in Judge Ruland's opinion, and that factual questions were raised by the second claim for relief of the amended complaint which were not sufficiently answered by the affidavits of the administrators on the issue of the extent of public assistance received. Thus, in my view, the dismissal of that claim was premature also. To hold that a claim is stated based on the role of the hospitals in serving the public, but that one is not stated on the basis of their role in receiving public assistance in payment for such service, is to me a distinction without any real difference.